## GARRETT v. JOHN DEERE PLOW CO.
### No. 11868.

Court of Civil Appeals of Texas. Dallas.
Jan. 18, 1936.

Rehearing Denied Feb. 15, 1936.

N. C. Walker, of San Saba, for plaintiff in error.

McCormick, Bromberg, Leftwich & Carrington and W. C. Gowan, all of Dallas, for defendant in error.

LOONEY, Justice.

John Deere Plow Company, a partnership, sued T. A. Garrett to recover the amount due on three promissory notes given by defendant as part payment for a combine (reaper and thresher), and to foreclose the lien of a chattel mortgage on the machine. Defendant admitted the execution of the notes and mortgage, but in a cross-action sought recovery of damages based on the alleged breach of express verbal warranties, alleging in substance that, as an inducement to the purchase of the combine by defendant, plaintiffs' authorized agent represented that the combine was of the best material, the product of the best workmanship, would do the work for which it was designed, that is, cut, thresh, and sack grain free of weed and other foreign seed in one continuous operation, and that, upon defendant expressing unwillingness to sign the notes and mortgage and consummate the trade until it was shown that the machine would do the work as represented, plaintiffs' said agent, in order to induce defendant to sign the instruments and consummate the trade, represented that plaintiffs would see that the machine was, and would do the work, as represented.

Defendant alleged the breach of these verbal warranties; that the value of the combine was much less than the amount he agreed to pay for same; that he sustained certain special damages, in that, due to the inefficiency of the machine, defendant lost profits in failing to cut certain grain for others, and lost part of his own grain, caused from delay in reaping and threshing.

Replying to the cross-action, plaintiffs alleged, in substance, that defendant purchased the combine under the terms of a written order given J. L. Burleson & Sons, plaintiffs' dealer at Richland Springs, San Saba county, Tex.; that said order contained plaintiffs' express written warranties given in connection with the sale of the combine; the pleadings described the warranties in detail, alleged full compliance therewith by plaintiffs, but that defendant failed to comply with certain express provisions of said warranty clause, and continued to use the machine until dispossessed under a writ of sequestration; thereby, according to the terms of said warranty, defendant unconditionally accepted the combine, that all warranties were thus fulfilled by plaintiffs, and all claims for the breach of same were waived by the defendant.

In a supplemental answer, defendant denied that plaintiffs were parties to the written order given Burleson & Sons for the combine, the same being solely a contract between defendant and Burleson & Sons, and the warranties printed on the back of said order being solely their warranties and not those of plaintiffs; that subsequent to the giving of said order to Burleson & Sons, the combine not having been delivered by them, plaintiffs' traveling salesman, Claud Vaughn, sold the combine in question direct to defendant, under a new and independent oral contract, and warranted the machine in the respects hereinbefore alleged; to which plaintiffs replied, denying that the subsequent dealings between Claud Vaughn and defendant constituted a novation of the written contract between him and Burleson & Sons, and that the warranties printed on the back of same were not waived.

At the conclusion of the evidence, on motion of plaintiffs, the court instructed a verdict in their favor, rendered judgment against defendant for the amount due upon the notes, with foreclosure of the chattel mortgage lien upon the machinery, and that he take nothing on his cross-bill, from which he appealed by writ of error, and in a number of assignments challenges the correctness of the action of the court. The answer of plaintiffs to these assignments may be reduced to two general propositions, (1) that before defendant can recover in his cross-action, he must

establish a novation, that is that the alleged verbal contract with Claud Vaughn, plaintiffs' traveling salesman, was intended as a substitute for the written order—contract with Burleson & Sons—and that, unless there was such a novation, the Burleson & Sons order-contract stands unimpaired, and is determinative of the rights of the parties, and (2) further assuming that a novation was not effected, the proposition is urged that since the written contract signed by defendant (order for the combine) provided that no agent of plaintiffs could alter, add to the warranty provisions of said contract, or waive compliance therewith, defendant knew Claud Vaughn, plaintiffs' traveling salesman, was not authorized to enter into the new sales agreement, or waive compliance with the terms, conditions, and warranties of the said order-contract; and as the defendant had failed, in several respects, to comply with the warranty clause, that the trial court did not err in instructing a verdict and rendering judgment against defendant.

The evidence, in our opinion, tends strongly to support the issue presented in defendant's cross-bill, and unless the plow company could avail itself of the warranty clause printed on the back of the Burleson order contract given by defendant, the case should have been submitted to the jury. The decision, in our opinion, turns on the question, whether or not, the contract between Burleson & Sons and defendant, in legal effect, was also a contract between defendant and the plow company? if not, clearly the case should have been submitted to the jury.

Burleson & Sons were plaintiffs' "dealer" at Richland Springs, San Saba county, with authority to promote sales of their goods in that trade territory, and in that capacity took defendant's written order for a No. 5 twelve-foot John Deere combine, sacking attachment and transport truck, the price for same being $1,585 f. o. b. factory (Moline, Ill.), to be evidenced by three promissory notes secured by a chattel mortgage on the property ordered; the warranty clause invoked by plaintiffs is printed on the back or reverse side of the order.

Plaintiffs cannot, in our opinion, be considered parties to the contract between Burleson & Sons and defendant; they did not join in its execution, assumed none of its obligations, hence have not the right to invoke, as against defendant, any of its provisions. According to its terms, the contract is solely between Burleson & Sons and defendant, reading in part as follows: "I hereby purchase from J. L. Burleson & Sons, subject to the warranties printed on the back hereof, goods described as follows (here follows description of the goods ordered). To be delivered to me about May 15, 1931"; followed by a description of the notes to be executed by defendant, and a provision for the security of same by chattel mortgage on the combine, concluding as follows: "It is agreed that, if I fail to make settlement for the goods per this order, and take them when notified, my deposit is forfeited as liquidated damages, and you may then otherwise dispose of the goods; that title to the goods purchased shall remain in you until paid for in full in cash, and after delivery shall be held at my risk and expense, including taxes; that you shall not be liable for any delay in or failure to make delivery; that all warranties are void unless I make full settlement per this order at time of purchase or delivery hereunder; that I acknowledge receipt of a copy hereof."

The warranty printed on the back of the order imposed no primary obligation on plaintiffs in favor of a purchaser of their goods from the dealer, nor did the dealer thereby assume, primarily, any obligation, its legal effect being simply a guaranty on the part of the dealer that the plow company (plaintiffs) would, under the conditions and stipulations mentioned, warrant the material and workmanship of their machinery and guarantee that same would do good work, etc. The written contract (dealer's contract) between plaintiffs and Burleson & Sons is quite lengthy, but we think it obvious from its provisions that plaintiffs did not intend to become, nor did they become, parties to contracts between dealers and their customers, or assume any obligation to the dealers' customers; in truth, the dealer was not mandatorily required by the plow company to give the customer a written warranty in the form suggested by plaintiffs, and, if given, the dealer could waive compliance, or change same; the effect of the failure of the dealer to give his customer the written warranty, or the waiver or change of same, simply forfeited the obligation of the plow company to "protect the dealer and stand back of him in giving such warranty." The relation

of the plow company to the warranty given by dealers to their customers is clearly revealed in paragraph 23 of the dealer's contract, as follows: "Twenty-third: (a) That all tractors, combines or threshers listed herein are warranted in accordance with the printed warranty on the user's order blank furnished by the Plow Company, copy of which is printed below and which is made a part of this contract. The Plow Company will furnish the dealer with a supply of user's order blanks with the warranty printed thereon. In all cases where the dealer gives his customers a written warranty in the form suggested the Plow Company will protect the dealer and stand back of him in giving such warranty. (b) This agreement, however, is conditioned on the dealer giving the Plow Company at Dallas, Texas, prompt written notice of any claim or complaint by a customer. The Plow Company shall be under no liability whatever except where a written warranty is given in said approved form without addition or alteration of any kind, and shall be released from all liability hereunder, in case the dealer shall without its consent waive compliance by his customer with any of the conditions under said warranty or shall consent to any change therein."

We think it evident that the relation of Burleson & Sons (dealer) to the plow company was that of a purchaser of the goods ordered, and for the price therefor, became debtor. This is definitely shown in paragraph 16 of the dealer's contract, reading: "Sixteenth: (a) That the dealer will give his (their or its) notes for all goods ordered and shipped hereunder, upon receipt of same or whenever requested to do so by the Plow Company. Such notes to be payable with exchange and collection charges and to bear interest at the highest legal rate after maturity. The dealer further agrees, whenever requested by the Plow Company, to secure all indebtedness incurred under this contract, whether evidenced by note, upon accounts or other form of indebtedness, by good farmers' notes—or accounts—satisfactory to the Plow Company—of an equal amount, and twenty (20%) per cent in addition thereto, which shall be held as collateral security for the payment of the said dealer's indebtedness." In a supplement to the dealer's contract, a finance plan for accepting farmers' paper for direct credit on sales of John Deere tractors, combines, and threshers for the 1931 trade was agreed to; and elaborate "instructions to dealers for taking farmers' orders for tractors, combines and threshers and making settlements and reports where the John Deere Plow Company are requested to take farmers notes for direct credit to dealers accounts," were given.

Aside from the unambiguous language of the contract between Burleson & Sons and defendant, which we think forbids the idea that the plow company was a party thereto, the quoted and kindred provisions of the dealer's contract show indisputably that the company did not intend to become embroiled in controversies between dealer and customer. The obligations assumed by the plow company, in regard to such transactions, were not to the customers, but to the dealer, under the stipulations and safeguards mentioned in the contract. So, not being a party to the contract between Burleson & Sons and the defendant, we conclude that the plow company has no right to invoke the provisions of the warranty clause of the Burleson order-contract in answer to defendant's cross-action for damages; nor are we prepared to assent to the correctness of the company's other contention that, before defendant can recover in his cross-action, he must establish a novation, whereby the contract consummated with Claud Vaughn, under which the combine was delivered and the notes in suit executed, was intended as a substitute for the written order-contract given Burleson & Sons, and that, unless a novation was consummated, the written order given Burleson & Sons stands unimpaired and determines the rights of the parties to this suit.

We think it obvious that the facts failed to establish a novation, as that term is known to law, as Burleson & Sons, parties to the original contract, were not parties to the later arrangement between defendant and the company's traveling salesman. However that may be, the evidence does tend to establish a novation in the sense that, subsequent to the Burleson order-contract, which in fact was never executed, a new and entirely independent verbal contract was consummated between the company and defendant, under which the combine was delivered and the notes and mortgage executed. So, if it be conceded that, notwithstanding the new arrangement between defendant and the company's traveling salesman, the Burleson con-

tract stands unimpaired, as contended by plaintiffs, yet the company, not being a party to that contract, cannot invoke any of its provisions in answer to the defendant's cross-bill.

We have reached the conclusion that the trial court erred in instructing a verdict for plaintiffs, and for this reason reverse the judgment below and remand the cause for trial on the issues presented in and growing out of defendant's cross-bill.

·Reversed and remanded.